RECEIVED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
DATE 01.10.08

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| John Landry, et al | Civil Action No. 06-0262 |
| versus | Judge Tucker L. Melançon |
| Apache Corp., et al | Magistrate Judge C. Michael Hill |

## MEMORANDUM RULING

Before the Court is a Motion For Summary Judgment filed by defendant Rolls-Royce Corporation [Rec. Doc. 42]. Oppositions to Rolls-Royce's motion were filed by Rotorcraft Leasing Company, LLC and Apache Corporation ("Rotorcraft") [Rec. Doc. 56] and by plaintiffs, John and Chantelle Landry [Rec. Doc. 53]. Rolls-Royce filed a reply memorandum to Rotorcraft's opposition [Rec. Doc. 64] and to plaintiff's opposition [Rec. Doc. 58]. A sur-reply memorandum to Rolls-Royce's reply was filed by plaintiffs [Rec. Doc. 62]. For the reasons that follow, the Motion For Summary Judgment will be denied.

### I. Background

This action arises from damages suffered by plaintiff, John Landry, on February 18, 2005 when a helicopter powered by a gas turbine engine manufactured by Rolls-Royce and maintained and operated by Rotorcraft was forced to make an auto-rotative

landing in the Gulf of Mexico as a result of a loss of engine power shortly after take-off from an offshore platform. Plaintiffs, John and Chantelle Landry, individually and on behalf of their minor child, Connor Landry, filed this action on February 17, 2006 naming as defendants Rolls-Royce, manufacturer of the helicopter engine, Rotorcraft, owner/operator of the helicopter, Bell Helicopter Textron, Inc., manufacturer of the helicopter and Midstream Fuel Services, LLC, supplier of the fuel which was being used in the helicopter at the time of the accident. *R. 1.* It is undisputed that the helicopter lost power and that the evidence before the is that the power loss was due to the collapse of the fuel nozzle inlet screen of the engine. The nozzle screen had become clogged with a slimy, gel-like substance commonly referred to as "apple jelly" which had formed from the presence of anti-icing additive and water in the fuel of the aircraft.

The helicopter was a Bell Model 206L-3 helicopter N512RA with a Rolls-Royce Model 250, 250-C30P, Serial Number CAE 890379, engine. The helicopter was owned and operated by Rotorcraft. At the time of required overhauls of the helicopter, from December 30, 1993 until October 4, 2004, Rolls-Royce fuel nozzles bearing part number ("P/N") 6899001, the old design, were installed in the Rolls-Royce engine. On October 4, 2004 during an overhaul, Rotorcraft replaced a fuel nozzle of the old design with a newly designed nozzle, 6899001. On February 11, 2005, one week before the

2

incident, Rotorcraft replaced the newly designed fuel nozzle with a nozzle bearing P/N 5233600, Serial Number AG51391, which had been purchased by Rotorcraft from Petroleum Helicopters, Inc., with a total use time of 992 hours out of a 2,000-hour overhaul life.  P/N 5233600 was manufactured by Rochester Products Division of General Motors Corporation, a vendor for Rolls-Royce.  Rolls-Royce did not change the Rochester part number to the corresponding Rolls-Royce part number prior to incorporating the nozzle into its engine.  *Exh. D, Depo. Of Gary D. Sauza, Rolls-Royce Corp. Rep., pp. 25-26, 45-46.*  As in the case of the nozzle at issue, fuel nozzles are incorporated into engines built by Rolls-Royce and the records and drawings maintained for each Rolls-Royce engine includes the part number of the fuel nozzle installed in the engine by Rolls-Royce.[1]  *Id. at pp. 10-17-07, 37.*

## II.  Summary Judgment Standard

A motion for summary judgment shall be granted if the pleadings, depositions and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56;  *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994)(en banc).  When a party seeking summary judgment bears the burden of proof at trial, it must come forward with

---

[1] In its reply memorandum [Rec. Doc. 64], Rolls-Royce contests that Part No. 5233600 was "an authorized Rolls-Royce part with a Rolls-Royce part number", but states that the issue is "irrelevant" because its use by Rotorcraft was not reasonably anticipated.  *R. 64.*

evidence which would entitle it to a directed verdict if such evidence were uncontroverted at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim. *Celotex Corp.,* 477 U.S. at 324.

Once the movant produces such evidence, the burden shifts to the respondent to direct the attention of the court to evidence in the record sufficient to establish that there is a genuine issue of material fact requiring a trial. *Id.* The responding party may not rest on mere allegations made in the pleadings as a means of establishing a genuine issue worthy of trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Little*, 37 F.3d at 1075. If no issue of fact is presented and if the mover is entitled to judgment as a matter of law, the court is required to render the judgment prayed for. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 322. Before it can find that there are no genuine issues of material fact, however, the court must be satisfied that no reasonable trier of fact could have found for the non-moving party. *Id.*

### *III. Analysis*

The parties agree that the Louisiana Products Liability Act ("LPLA"), *La. R.S. 9:2800.51 et seq.*, provides the exclusive theories of liability against manufacturers for damage caused by their products, and that Rolls-Royce is a manufacturer under the

LPLA, as it incorporated into its engines the fuel nozzle screen at issue.  The LPLA

defines a "manufacturer" as follows:

> (1)  "Manufacturer" means a person or entity who is in the business of
> manufacturing a product for placement into trade or commerce. "Manufacturing
> a product" means producing, making, fabricating, constructing, designing,
> remanufacturing, reconditioning or refurbishing a product. "Manufacturer" also
> means:
>   . . .
>> (c) A manufacturer of a product who incorporates into the
>> product a component or part manufactured by another
>> manufacturer.
>
> *La.Rev.Stat.Ann. § 9:2800.53.*

Louisiana Revised Statute 9:2800.54 provides the four (4) theories of liability that are

available in an action against a manufacturer:

> A. The manufacturer of a product shall be liable to a claimant for damage
> proximately caused by a characteristic of the product that renders the
> product unreasonably dangerous when such damage arose from a
> reasonably anticipated use of the product by the claimant or another
> person or entity.
>
> B. A product is unreasonably dangerous if and only if:
>
> (1) The product is unreasonably dangerous in construction or composition
> as provided in R.S. 9:2800.55;
>
> (2) The product is unreasonably dangerous in design as provided in R.S.
> 9:2800.56;
>
> (3) The product is unreasonably dangerous because an adequate warning
> about the product has not been provided as provided in R.S. 9:2800.57;
> or
>
> (4) The product is unreasonably dangerous because it does not conform

5

to an express warranty of the manufacturer about the product as provided in R.S. 9:2800.58.

*La. R.S. 9:2800.54*; *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 261 (5th Cir. 2002).

In its motion for summary judgment, Rolls-Royce asserts that the issue before the Court is whether or not the Rolls-Royce engine was being put to a reasonably anticipated use under the LPLA at the time of the incident *sub judice*. More specifically, whether or not Rolls-Royce did "all it could possibly do to provide warning" to Rotorcraft, "an extremely sophisticated and knowledgeable user of the engine," as to the potential for the problem and the means to prevent it. *R. 42.*

As evidence of fulfilling its obligation to adequately warn of the fuel nozzle screen problem (the third liability factor listed above), Rolls-Royce cites the following:

1)   Months before the incident, "Rolls-Royce published Commercial Service Letters, Commercial Engine Bulletins and amended its Operation and Maintenance manual to provide specific warning to operators of its engines regarding the dangers of this fuel contamination [apple jelly] and offered an improved fuel nozzle screen to allow for further resistance to collapse as a result of the contamination." *Id., Exh. C, D, E.*

2)   Thereafter, the Federal Aviation Administration published an Airworthiness Directive making mandatory the timed removal of their old fuel nozzle screen and replacement with the newly designed, more resistant nozzle screen. *Exh. F.*

3)   "Rotorcraft had actually replaced a nozzle of the old design with a newly designed nozzle in the very engine involved in this incident on October 4, 2004." *Exh. J.*

4)    On "February 11, 2005, ... Rotorcraft removed the newly designed nozzle and replaced it with a nozzle of the old design which was not collapse resistant." *Exh. J.*

Rolls-Royce contends that it was necessary to provide a warning to its customers and information to the FAA as to Rolls-Royce "approved part numbers", but not the corresponding vendor numbers.  Rolls-Royce further contends that a "sophisticated user" such as Rotorcraft should have realized from the warnings it provided to its customers that once a nozzle of the new design was used to replace the old nozzle, a newly designed nozzle with the same number should be used again.  Rolls-Royce argues that even though it did not list the fuel nozzle numbered 5233600 in its list of nozzles that must be replaced, Rotorcraft through its mechanics, should have noticed that the part was an old design and should had contacted Rolls-Royce as to whether or not it should be used.

In its opposition to the motion for summary judgment, Rotorcraft argues that Rolls-Royce had actual knowledge and information that fuel nozzle P/N 5233600, installed in the engine at the time of this incident, corresponded to Rolls-Royce fuel nozzle P/N 6899001, but Rolls-Royce failed to list P/N 5233600 as a part to be replaced or provide that 5233600 was the equivalent of P/N 6899001. *R. 42, Exh. D;*

Rotorcraft further argues that the Federal Aviation Administration's ("FAA") Airworthiness Directive AD 2004-24-09 ("AD") lists the affected Rolls-Royce nozzle

7

part numbers as 6890917, 6899001 and 6852020 and does not reference nozzle P/N 5233600 at issue in this incident. The record indicates that the Rolls- Royce part numbers listed in the AD were provided by Rolls-Royce. *Depo. Of Souza, p. 13; October 17, 2007 Depo. Of Bestiality, p. 44.*

While Rolls-Royce contends that, based on the warnings it provided, Rotorcraft's use of P/N 5233600 was not reasonably anticipated and it cannot be held liable for Rotorcraft's action. "Reasonably anticipated use" is defined by the LPLA as "a use or handling of a product that the product's manufacturer should reasonably expect of an ordinary person in the same or similar circumstances." *R.S. 9:2800.53(7).* "The statutory concept of 'reasonably anticipated use' is much narrower than jurisprudential concept of "normal use" which was applied prior to the enactment of the LPLA. 'Normal use' included misuse that was contrary to the manufacturer's instructions. By contrast, 'reasonably anticipated use' is an objective standard which does not include uses clearly contrary to warnings." *Green v. BDI Pharmaceutical,* 803 So.2d 68, 75 (La.App. 2 Cir.,2001) (internal citations omitted). "Reasonably anticipated use" does not apply in a case, such as this one, where no warning as to the use of nozzle P/N 5233600 was given.

In plaintiffs' opposition to Rolls-Royce's motion for summary judgment, plaintiffs submit the affidavit of Michael K. Hines, an expert "in the areas of Aviation

Accident Reconstruction, Aviation Design and Manufacture, Aviation Human Factors, Aviation Safety Audits, Helicopter Activities Offshore in the Gulf of Mexico, Pilot Operations, and Aviation Ground Operations." *R. 53, Affidavit of Michael K. Hines.* Hines opines that Rolls-Royce failed to properly warn the users of their products about hazards associated with using fuel containing the anti-icing compound known as "Priest." Hines states in his affidavit, "[while Rolls Royce did issue a notice to the aviation community about fuel system contamination and 'the use of Jet A fuel and an anti-icing inhibitor (DiEGME[2])', the wording was such that the civilian aviation community did not correctly understand or recognize what Rolls Royce was attempting to communicate. As stated many times in the depositions of the Defendant Rotorcraft's employee Gerald Thomas Golden, the term DiEGME was not known or used within the aviation community. [Depo. Of Gerald Thomas Golden, pp. 82, 86]." Hines further states that "[t]he Rolls Royce <u>Commercial Service Letter</u> also emphasized '*Fuel System Contamination*', as Golden stated, associating the word 'contamination' with the use of approved additives such as Priest in jet additives such as Priest in jet fuel is not the industry norm. He agrees with Golden's statement." *Id. at p.12.* Golden's deposition dated October 5, 2007, confirms that he had never heard the term "DiEGME" before the helicopter crash in this case. *Depo. Of Gerald Thomas Golden,*

---

[2] "DiEGME" is the acronym for di-ethylene glycol monomethyl ether.

*pp. 38, 127, 157, 218.*

A motion for summary judgment can only be granted if the pleadings, depositions, and affidavits submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Before a court can find that there are no genuine issues of material facts it must be satisfied that no reasonable trier of fact could have found for the non-moving party. *Lade v. Chevron, U.S.A., Inc.*, 920 F.2d 272 (5th Cir. 1991).

Based on the record before the Court, Rolls-Royce cannot rely on a warning which was not issued to assert that Rotorcraft's actions were not reasonably anticipated. In light of the factual disputes in this case, including the wording of and information contained in the Rolls-Royce warnings, the information Rolls-Royce provided to the FAA for issuance of its AD and the evidence that the term "DiEGME" was not recognized in the aviation community, genuine issues of material fact exist as to whether or not an adequate warning about the product has been provided, and therefore, this case is not properly disposed of by summary judgment and Rolls-Royce's motion will be denied.

10