UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| John Landry, et al | Civil Action No. 06-0262 |
| versus | Judge Tucker L. Melançon |
| Apache Corp., et al | Magistrate Judge C. Michael Hill |

### MEMORANDUM RULING

Before the Court is a Motion For Summary Judgment Filed on Behalf of Defendant, Bell Helicopter Textron, Inc. ("Bell") [Rec. Doc. 74], plaintiffs, John and Chantelle Landry's, opposition thereto [Rec. Doc. 81] and a reply memorandum filed by Bell [Rec. Doc. 85]. For the reasons that follow, the Motion For Summary Judgment will be denied.

*I. Background*

This action arises from damages alleged to have suffered by plaintiff, John Landry, on February 18, 2005 when a Bell Helicopter Textron, Inc. Model 206L-3 helicopter, operated by Rotorcraft Leasing Company, LLC, was forced to make an auto-rotative landing in the waters of the Gulf of Mexico as a result of a loss of engine power shortly after take-off from an offshore platform. *R. 1.* The pilot, the other passenger and Landry were moved into life rafts before rough seas caused the

helicopter to roll over. *R. 74; 81.* Plaintiffs, John and Chantelle Landry, individually and on behalf of their minor child, Connor Landry, filed this action on February 17, 2006 naming as defendants Bell Helicopter Textron, Inc., manufacturer of the Model 206L-3 helicopter, Rotorcraft, as owner/operator of the helicopter, Rolls-Royce, manufacturer of the helicopter engine, and Midstream Fuel Services, LLC, the supplier of the fuel which was being used in the helicopter at the time of the accident. *R. 1.* It is undisputed that the helicopter lost power and that the power loss was due to the collapse of the fuel nozzle inlet screen of the engine. *R. 74; 81.*

The helicopter crash was investigated by a team which included "someone from the Federal Aviation Administration or the National Transportation Safety Board, Robert E. Ketchum, as the representative of Rolls-Royce, a representative of Rotorcraft and a representative of Bell."[1] After the accident, the fuel system of the aircraft was found to be filled with a gel-like substance commonly referred to as "apple jelly," formed from the presence of anti-icing additive or DiEGME or "PRIST" and water mixed with the fuel of the aircraft.

Since 1981, following incorporation of an airframe fuel filter designed to remove contaminants, including water from the engine's fuel system, Bell's

---

[1] Plaintiffs' Statement of Uncontested Material Facts states that the representative of Bell is believed to be Mark Stuntzer, *R. 81, Statement No.2, Ketchum Depo., pp. 62-63.*

Rotorcraft Flight Manual for the Model 206L3 helicopter states that "anti-icing fuel additives are not required for any ambient temperature." *R. 74, Exh. A-1.* Plaintiffs filed this action alleging that Bell, as the manufacturer of the helicopter, failed to adequately warn Rotorcraft, the owner/operator and plaintiff's employer, of the dangers of using PRIST in the fuel system of the helicopter resulting in the loss of engine power and forced auto-rotative landing. *R. 1; 74; 81.*

## II. Summary Judgment Standard

A motion for summary judgment shall be granted if the pleadings, depositions and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir.1994)(en banc). Initially, the party moving for summary judgment must demonstrate the absence of any genuine issues of material fact. When a party seeking summary judgment bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if such evidence were uncontroverted at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim. *Id.* If the moving party fails to carry this burden, his motion must be denied. If he succeeds, however, the burden shifts to the

non-moving party to show that there is a genuine issue for trial.[2] *Id.* at 322-23. Once the burden shifts to the respondent, he must direct the attention of the court to evidence in the record and set forth specific facts sufficient to establish that there is a genuine issue of material fact requiring a trial. *Celotex Corp.*, 477 U.S. at 324; Fed.R.Civ.Pro. 56(e). The responding party may not rest on mere allegations or denials of the adverse party's pleadings as a means of establishing a genuine issue worthy of trial, but must demonstrate by affidavit or other admissible evidence that there are genuine issues of material fact or law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144. 159 (1970); *Little*, 37 F.3d at 1075. There must be sufficient evidence favoring the non-moving party to support a verdict for that party. *Anderson*, 477 U.S. at 249; *Wood v. Houston Belt & Terminal Ry.*, 958 F.2d 95, 97 (5th Cir.1992). There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

---

[2] Where the nonmoving party has the burden of proof at trial, the moving party does not have to produce evidence which would negate the existence of material facts. It meets its burden by simply pointing out the absence of evidence supporting the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325. To oppose the summary judgment motion successfully, the non-moving party must then be able to establish elements essential to its case on which it will bear the burden of proof at trial. A complete failure of proof by the non-moving party of these essential elements renders all other facts immaterial. *Id.*

4

## III. Analysis

Bell alleges in its motion for summary judgment that it cannot be liable for a failure to warn because (1) Bell has no duty to warn of another manufacturer's product it did not manufacture, install or sell; (2) Bell cannot be liable under the LPLA because the subject incident did not arise from a reasonably anticipated use of its product; (3) Rotorcraft had actual knowledge of the fuel contamination which caused the engine failure, that is, the subject helicopter was equipped with an airframe fuel filter and Rotorcraft knew that PRIST was undesirable; (4) any failure to warn by Bell did not proximately cause plaintiff's accident; and (5) plaintiffs can point to no evidence that Bell had any knowledge of the condition which caused plaintiff's injuries.

### 1. Whether Bell Is A Manufacturer Under The LPLA

Plaintiffs argue that, as the manufacturer of the helicopter under the Louisiana Products Liability Act ("LPLA"), when Bell became aware of a characteristic of the helicopter that could cause damage, it became obligated to provide an adequate warning to "users and handlers of the product." The issue before the Court is whether Bell may be held liable to plaintiffs for alleged defects in a product manufactured and sold by another defendant which Bell incorporated in the helicopter which it manufactured and sold.

5

The parties agree that the law to be applied in this case is the Louisiana Products Liability Act ("LPLA"), *La. R.S. 9:2800.51, et seq.* Bell argues that the product at issue is the fuel nozzle, a part in the Rolls-Royce engine, which was contaminated with the anti-icing additive, PRIST. Bell asserts that as it is neither the manufacturer of the fuel nozzle nor of the contaminated fuel, it cannot be liable for failure to warn of another manufacturer's product.

In support of its argument, Bell cites Louisiana jurisprudence predating the adoption of the LPLA. *R.74, Home Ins. Co. v. National Tea Co.*, 577 So.2d 65, 74 (La. App. 1st Cir. 1990), *reversed in part on other grounds*, 588 So.2d 361 (La. 1988); *Duhon v. Pertoleum Helicopters, Inc.*, 554 So.2d 1270 (La. App. 3d Cir. 1989), overruled on other grounds by *Green v. Industrial Helicopters, Inc.*, 593 So.2d 634 (La. 1992); and, *Newman v. General Motors Corp.*, 534 So.2d 207, 209 (La. App. 4th Cir. 1988). Plaintiffs argue that as these cases were decided prior to the enactment of the LPLA, they are not relevant. Bell maintains that the cases are relevant because, "[t]his portion of the LPLA did not change or expand the law, but merely 'codifie[d] the law in Louisiana before the LPLA.'" *R. 85; A Primer On The Louisiana Products Liability Act*, 49 La. L. Rev. 565, 576-577 (1989). Plaintiffs further argue that the cases cited by Bell are distinguishable on their facts.

None of the cited cases involved a manufacturer who incorporated the part at

6

issue in the case into its product before the product left the manufacturer's control. Nor did any of the cases address a manufacturer, that acquired knowledge of a dangerous characteristic of a part after the product left the manufacturer's control.

Under the LPLA, a "manufacturer" is defined as

> (1) "Manufacturer" means a person or entity who is in the business of manufacturing a product for placement into trade or commerce. "Manufacturing a product" means producing, making, fabricating, constructing, designing, remanufacturing, reconditioning or refurbishing a product. "Manufacturer" also means:
> . . .
>> (c) A manufacturer of a product who incorporates into the product a component or part manufactured by another manufacturer.
>
> *La.Rev.Stat.Ann. § 9:2800.53.*

Based on the plain language of the LPLA, Bell was the manufacturer of the Bell Helicopter Model 206L-3, and as Bell incorporated the Rolls-Royce engine containing the fuel nozzle into its helicopter, Bell is a manufacturer under the LPLA.

### 2. Whether Bell Had A Duty To Warn

#### a. Reasonably Anticipated Use

Bell submits that the LPLA subjects the manufacturer to liability for failure to warn only when the resulting damage arises from the reasonably anticipated use of the product.[3] Bell further submits that the helicopter's flight manual "is clear in that

---

[3] Louisiana Revised Statute 9:2800.54 provides that a product is unreasonably dangerous "because an adequate warning about the product has not been provided as provided in R.S.

7

no anti-icing agents are to be used on this model unless specifically ordered by the Rolls-Royce engine manual." *R. 74; Exh. A.* Therefore, Bell asserts, the use of PRIST in the fuel system of the helicopter in this matter was not a reasonably anticipated use or misuse.

"Reasonably anticipated use" is defined by the LPLA as "a use or handling of a product that the product's manufacturer should reasonably expect of an ordinary person in the same or similar circumstances." *R.S. 9:2800.53(7).* "The statutory concept of 'reasonably anticipated use' is much narrower than the jurisprudential concept of 'normal use' which was applied prior to the enactment of the LPLA. 'Normal use' included misuse that was contrary to the manufacturer's instructions. By contrast, 'reasonably anticipated use' is an objective standard which does not include uses clearly contrary to warnings." *Green v. BDI Pharmaceutical,* 803 So.2d 68, 75 (La.App. 2 Cir.,2001) (internal citations omitted).

The affidavit of Bell's Flight Safety Investigator, Jack F. Suttle, Jr., which is attached to Bell's Flight Manual, states that "[f]ollowing [Bell's] incorporation of [an] airframe fuel filter [into the Model 206L-3 helicopter at issue] in 1981, Bell's Flight Manuals were amended to inform operators that 'anti-icing fuel additives are

---

9:2800.57"

8

not required for any ambient temperature.'" Suttle also states that his review of the Flight Manual confirms that nothing therein authorizes or approves the use of PRIST in the Model 206L3 helicopter in this case. The Flight Manual's statement that fuel additives "are not required" and its lack of any statement authorizing or approving the use of PRIST fails to support Bell's burden of proof that the use of PRIST constituted a misuse of the product. Whether a particular warning or instruction is adequate is a question for the trier of fact. *Jack v. Alberto-Culver USA, Inc.*, 949 So.2d 1256, 1259 (La. 2007)(citing *Bloxom v. Bloxom*, 512 So.2d 839, 844 (La.1987)). Bell's motion on the issue of reasonably anticipate use must therefore be denied.

### b. Failure To Warn

"In a failure to warn case, the claimant bears the burden of establishing that 'at the time the product left the manufacturer's control, the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product.' La. R.S. 9:2800.57. The LPLA defines 'adequate warning' as:

> a warning or instruction that would lead an ordinary reasonable user or handler of a product to contemplate the danger in using or handling the product and either to decline to use or handle the product or, if possible, to use or handle the product in such a manner as to avoid the danger for which the claim is made.

9

La. R.S. 9:2800.53(9)." *Jack v. Alberto-Culver USA, Inc.*, 949 So.2d 1256, 1258-59 (La. 2007).

Bell contends that any "enhanced warnings" on its part would have been futile in this case. Bell cites the July 17, 2006 corporate deposition and the October 5, 2007 personal deposition of Gerald Thomas Golden, Rotorcraft's vice-president, general manager and director of operations. Bell maintains that Golden's testimony evidences that "Rotorcraft knew as a matter of fact about the hazards associated with PRIST" and that "at the time of the incident, Rotorcraft had in place a strict prohibition against including PRIST in its fuel supply." *R.74, pp. 14-16.* A careful reading of Golden's deposition testimony fails to support Bell's contention.

Golden testified in his October 5, 2007 deposition that Rotorcraft began using fuel with the additive PRIST because Golden believed that it would help prevent bacterial growth in the fuel. *10/05/07 Depo. of Golden, pp. 62-63.* Golden further stated that sometime in 2002 he "became aware of one of our competitors having difficulties caused by contaminated fuel. And in talking with people in the industry I learned that there was a possible contribution by PRIST, although I did not know what it was. And that it was reiterated to me at that point in time that PRIST did not have anything to do with a bacterial or a fungal prevention, and that I was wasting our money." *10/05/06 Depo. of Golden, p. 39.* Golden stated that he did not know what

10

the contamination in the fuel was, and that he did not consider PRIST to be a contaminant of fuel. *Id. at p. 40.*

Taken in a light most favorable to plaintiffs, Golden's decision to stop using PRIST was not because he knew of a danger associated with the additive, but rather because he learned that PRIST was not a bacterial or fungal preventative. Bell also contends that Golden stopped using PRIST because a commercial bulletin, CSL-3193, dated April 23, 2002, alerted Golden to the use of PRIST. While Bell does not include a copy of the alleged bulletin in his motion, Bell's memorandum implies that the bulletin referred to "DiEGME" rather than "PRIST." *R. 74, p. 14.* Golden stated in his deposition that he had not heard the term "DiEGME" or "apple jelly" prior to the incident *sub judice. Depo. Of Golden, pp. 156-157.*

Bell also contends that plaintiffs have come forward with no evidence that any warning associated with the Bell 206L-3 helicopter was inadequate or that Bell knew about the hazards associated with PRIST. *R. 74, p. 17.* Plaintiffs argue that Bell had actual knowledge of other accidents prior to the accident at issue in which apple jelly formation was implicated through National Transportation Safety Board ("NTSB") reports. In particular, plaintiffs cite the NTSB report of the August 24, 2001 crash

11

of a Bell 206L-3 helicopter near Cameron, Louisiana. *R. 81, Exh. P-2, NTSB report.*[4] The NTSB report reflects that David D'Oscar, a Senior Accident Investigator for Bell participated in the investigation. *Id. at p. 5.* The report also reflects that "the hydraulic pump and three hydraulic servos were examined at Bell Helicopter's facility in Hurst, Texas, under supervision of the NTSB investigator-in-charge." *Id. at p. 1a.* The NTBS report states in pertinent part:

> Near the time of this accident two additional Air Logistic's helicopters, a Bell 407, N417AL, and a Bell 206L-3, N2616, experienced engine failure accidents/incidents. Examination of these helicopter's fuel system components, specifically the fuel nozzle inlet screens, revealed that they were collapsed and contaminated with a brown material that appeared polymeric-like to varnish-like appearance. The material was determined to be DIEGME, a fuel additive used as an icing inhibitor. Further testing on fuel samples from N417AL revealed that salt water and DIEGME were present in the fuel. The water in the fuel would allow bacteria to grow. The combination of bacterial growth, DIEGME, and water is conducive to the formation of an "apple-jelly" type material, which could then adhere to the fuel system components. The blockage of a fuel nozzle can result in its collapse and a subsequent interruption of fuel flow."
> *Id.*

Plaintiffs maintain that based on the foregoing, Bell had actual knowledge of the problem with the fuel contamination caused by the icing inhibitor more than two years before the accident that is the subject of this litigation.

---

[4] The certified copy of the NTSB report, made available from the NTBS public records file, is dated August 20, 2002.

Bell further contends that the subject helicopter was manufactured and sold by Bell no later than 1987. *R. 74, Exh. A, Aff. of Suttle.* Therefore, Bell could not have known of the problems associated with PRIST when it selected and installed the subject engine in the helicopter. Plaintiffs maintain that it is immaterial whether Bell knew of the problem when it manufactured the helicopter as its subsequent awareness of the problem gave rise to a duty to warn under the LPLA.

"Louisiana law ascribes to a manufacturer a duty to provide warning of any danger inherent in the normal use of its product which is not within the knowledge of an ordinary user. La. R.S. 9:2800.57 C. The manufacturer's duty to warn is a continuing one." *Bunge Corporation v. GATX Corporation*, 557 So.2d 1376, 1384 (La.1990). "A manufacturer with knowledge that a machine it built could malfunction acquires a duty to warn a product user of said danger." *Id.*

Finally, Bell contends that any failure to warn by Bell did not proximately cause the plaintiff's damages, and therefore, Bell cannot be liable for failure to warn under the LPLA. Bell asserts that plaintiff must prove that a proper warning would have changed the course of action. Bell cites the deposition testimony of Golden which states that he was not sure whether Rotorcraft's "procedures... currently in place" would have prevented the incident at issue. Bell states, without support, that

13

"no evidence has been presented which would show that Bell was the cause of plaintiff's injuries." *R. 74, p. 17.* As a result of the foregoing, there are factual disputes which preclude granting Bell's motion as to proximate cause.

A motion for summary judgment can only be granted if the pleadings, depositions, and affidavits submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Before a court can find that there are no genuine issues of material facts it must be satisfied that no reasonable trier of fact could have found for the non-moving party. *Lade v. Chevron, U.S.A., Inc.*, 920 F.2d 272 (5th Cir. 1991). Based on the record before the Court and in light of the factual disputes in this case, genuine issues of material fact exist as to whether or not an adequate warning about the product has been provided, and therefore, this case is not properly disposed of by summary judgment. Bell's motion will be denied.